# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHRISTINE DEEDS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-142** |
| | * | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | * | **SECTION "L"(2)** |

## ORDER & REASONS

The Court has pending before it Defendant State Farm Mutual Automobile Insurance Company ("State Farm")'s motion for summary judgment. (Rec. Doc. 25). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.    Background**

This disability discrimination and retaliation case arises out of Plaintiff Christine Deeds's employment with Defendant State Farm. Plaintiff has been diagnosed with Irritable Bowel Syndrome ("IBS") and suffered from that condition at all times relevant to this case. Plaintiff takes prescription and over-the-counter medication for her condition, including Bentyl, Welchol, and Immodium, as well as Citrucel fiber which Plaintiff would mix with water in the kitchen at work. Plaintiff states that she suffers from diarrhea every time after she eats a meal, as well as other symptoms and side effects from her medication that require frequent trips to the bathroom.

Plaintiff began employment with State Farm on August 1, 1994. The parties do not dispute the sequence of events that led to Plaintiff's termination, although Plaintiff disputes whether Defendant's employment actions were in fact justified. Prior to March 1, 2007, Plaintiff's job primarily involved handling and filing mail. On March 1, 2007, she transferred to

a different department and began working as a Claims Service Assistant ("CSA") under a new manager, Matt Konzem. Plaintiff's duties as a CSA included completing "activities" assigned by a computerized task "queue." The record reflects that Plaintiff's former duties did not involve working with the "queue" system.

On December 6, 2007, Plaintiff received the lowest possible ratings in "Results" and "Competencies," two key areas of her 2007 end-of-cycle job performance review.[1] The review noted that her "production numbers steadily trended downward from July through October even though her duty basically remained unchanged" and noted that Konzem warned her this "was not acceptable." In the first two weeks of January, Konzem began tracking and reporting on Plaintiff's daily productivity, which failed to show any improvement following the December job review. On January 11, 2008, Konzem sat with Plaintiff at her work station to observe her work process and make suggestions on how she might improve.

On January 28, 2008, there was a meeting between Plaintiff, Konzem, and Tim Wooldridge, a regional manager superior to Konzem. The parties dispute whether Konzem or Plaintiff requested the meeting, and whether the purpose of the meeting was for Plaintiff to notify Wooldridge about Konzem's treatment of her, or to speak with Plaintiff about her poor performance. Regardless, at the meeting Plaintiff was given a memorandum advising her that her work performance was unacceptable and needed to improve, but Plaintiff refused to sign the memorandum in acknowledgment of receipt.

On February 25, 2008, Konzem again met with Plaintiff to discuss Plaintiff's

---

[1] Again, Plaintiff admits that she received these reviews but denies that they were warranted by the quality and quantity of her work.

productivity, her interactions with her coworkers, and her gaps in production. The parties dispute whether Plaintiff's production improved after this meeting. Another meeting occurred on March 4, 2008. On March 7, 2008, Plaintiff was terminated.

During the relevant periods of her employment with State Farm, Plaintiff had an additional job as a part-time retail salesperson at Dillard's department store. From November 1, 2007 through March 7, 2008, she worked for Dillard's for a total of 248 hours and 47 minutes, and from anywhere between three and 21 hours each week, on top of her full-time employment at State Farm.

Plaintiff filed suit in the United States District Court for the Eastern District of Louisiana, alleging that Defendant violated the Americans with Disabilities Act ("ADA") by refusing her an accommodation and retaliating against her for requesting that accommodation or complaining about her supervisor.

## II. Present Motion

Defendant now moves for summary judgment on all of Plaintiff's claims. With respect to the failure-to-accommodate claim, Defendant contends that Plaintiff cannot show that she was disabled within the meaning of the ADA or that she was otherwise qualified for her job. Defendant also argues that, even if those other elements are satisfied, it accommodated Plaintiff in all the ways that she requested. With respect to the retaliation claim, Defendant argues that Plaintiff cannot show that her request for an accommodation was causally linked to her termination.

In an unnecessarily belligerent opposition,[2] Plaintiff argues that there are fact questions regarding whether she was disabled, whether she was productive enough to be otherwise qualified for her job, whether Defendant failed to accommodate her IBS, and whether Defendant fired her because she requested an accommodation. Plaintiff essentially argues that Defendant and its employees are not credible, that the trier of fact could believe her story over State Farm's, and that her version of the facts suffices to state claims under the ADA.

## III. Law & Analysis

### A. Summary Judgment

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific

---

[2]Plaintiff's counsel frequently resorts to *ad hominem* rhetoric and hypberbole. *E.g.*, "...the utter hypocrisy of any State Farm investigation...."; "...ostrich in the sand posturing..."; "Such fakery only confirms State Farm [sic] mendacity." (Rec. Doc. 30 at 7, 11, 21).

4

facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B.     Failure to Accommodate Under the ADA**

"To establish a prima facie case of discrimination based on failure to accommodate a disability, [a plaintiff] is required to show: (1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation." *Mzyk v. N.E. Indep. Sch. Dist.*, 397 F. App'x 13, 15 n.1 (5th Cir. 2010). Defendant challenges Plaintiff's ability to establish a *prima facie* case as to the elements of disability, qualification, and failure to accommodate.

**1)     Disability**

At all times in question, the ADA defined "disability" as follows:

(2) Disability
The term "disability" means, with respect to an individual–
    (A) a physical or mental impairment that substantially limits one or more
    major life activities of such individual;
    (B) a record of such an impairment; or
    (C) being regarded as having such an impairment.

42 U.S.C. § 12102 (2007).[3] The statutory definition of "disability" "'needs to be interpreted

---

[3]Congress amended the ADA after all of the relevant conduct in this case; the Fifth Circuit has held that those amendments are not retroactive, and accordingly the Court will apply the law in effect at the time of the alleged conduct without noting each instance in which it has been superseded by statute. *See Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 857 (5th Cir. 2010)

strictly to create a demanding standard for qualifying as disabled.'" *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (U.S. 2002)). The Court must "conduct a rigorous and carefully individualized inquiry into [Plaintiff's] claimed disability to fulfill [the] statutory obligation to determine the existence of disabilities on a case-by-case basis." *Id.* (quotation omitted).

Plaintiff argues under the first prong that she had "a physical or mental impairment that substantially limits one or more major life activities."[4] Disability under that prong requires three showings: that Plaintiff had an "impairment," that a "major life activity" was limited by the impairment, and that the impairment "*substantially* limited" that major life activity. *See Waldrip*, 325 F.3d at 654. An impairment was defined at the time as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

---

(applying prior version of ADA to claims arising before January 1, 2009).

[4]Plaintiff also argues, in a single sentence, that Defendant "regarded" her has having a disability, under 29 U.S.C. § 12102(1)(C). (P's Opp. at p. 7). "There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. U. Air Lines, Inc.*, 527 U.S. 471, 489 (1999). "In both cases, it is necessary that a covered entity entertain *misperceptions* about the individual–it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* (emphasis added). The plaintiff must also show that "the impairment, if it existed as perceived, would be substantially limiting." *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000).

Plaintiff has not articulated any *misperception* by Defendant regarding her symptoms that caused Defendant to incorrectly believe that she had a substantially limiting impairment. The "regarded as" prong does not apply in this case.

6

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).[5]

The impairment must also affect a "major life activity." "Major life activities" are "those activities that are of central importance to daily life, and activities that are central to the life process itself." *Waldrip*, 35 F.3d at 655 (quotations omitted). At the time in question, regulations defined a "major life activity" as including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Finally, the impairment must *substantially limit* that major life activity. This requirement:

> is the linchpin of § 12102(2)(A). Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking. For this reason, an impairment must not just limit or affect, but must *substantially* limit a major life activity.

*Waldrip*, 324 F.3d at 655 (emphasis in original). This is "a demanding standard for qualifying as disabled." *Toyota*, 534 U.S. at 197. "Permanency, not frequency, is the touchstone of a substantially limiting impairment." *Waldrip*, 324 F.3d at 655 (quotation omitted).

With respect to the impairment element, Plaintiff provides competent summary judgment evidence in the form of medical records and testimony from herself and her treating physician that she had been diagnosed with irritable bowel syndrome and suffered from symptoms including frequent diarrhea. A trier of fact could find that this testimony is credible and that Plaintiff's IBS was an impairment.

---

[5]The regulations are not controlling or entitled to *Chevron* deference, but the Fifth Circuit considers them to be persuasive authority. *See Waldrip*, 325 F.3d at 655 n.1.

With respect to the remaining elements, that Plaintiff's impairment *substantially* limited a major life activity, the parties disagree. A genuine question of fact as to these elements will preclude summary judgment. *See Cutrera v. Bd. of Supervisors of La. St. Univ.*, 429 F.3d 108, 112 (5th Cir. 2005). A number of opinions have addressed ADA claims premised on IBS, but the cases are fact-intensive and most are distinguishable in one way or another from the present circumstances. In *Branch v. City of New Orleans*, the Fifth Circuit affirmed a jury verdict against a plaintiff alleging discrimination on the basis of her IBS. 78 F.3d 582, 1996 WL 60610 (5th Cir. 1996). The Circuit held that the plaintiff's "attacks of diarrhea and abdominal discomfort" did not substantially limit any of her major life activities. 1996 WL 60610, at *4. But *Branch* was an appeal from a motion for judgment as a matter of law or for new trial, after the plaintiff had a chance to present her evidence to a jury. *Id.* at *2. Moreover, the jury verdict stood because the record established that the plaintiff experienced only "flare-ups ... about once a year ... only for a few days." *Id.* at *4. Thus, *Branch* is procedurally distinguishable and also involved evidence of less frequent IBS "flare-ups."

In *Atencio v. Joint Jerome School Dist. No. 261*, the court granted summary judgment against an ADA plaintiff; although the plaintiff testified that she "had to use the restroom frequently, ... had to be careful of her diet, and ... had to be careful when doing an activity ... to note where the restroom was," those limitations did not rise to the level of *substantial* impairment of her ability to work and did not. — F. Supp. 2d —, 2011 WL 3439940, at *8-9 (D. Idaho Aug. 8, 2011). The court noted that the "symptoms are *intermittent*" and that the plaintiff did not articulate how the impairments interfered with any other life activities. *See id.* at *8 (emphasis added). In *Pedroza v. Autozone, Inc.*, summary judgment was granted because the

plaintiff did not "marshal sufficient support for his position" that "his impaired restroom habits constitute a major life activity for purposes of the ADA." 536 F. Supp. 2d 679, 696-97 (W.D. Tex. 2008). And in *Hall v. Principi*, summary judgment was granted on an analogous Rehabilitation Act disability claim because "Plaintiff has offered no summary judgment evidence on the issue of disability in general or as to his irritable bowel syndrome in particular." No. L-03-CV-90, 2006 WL 870190, at *8 (S.D. Tex. Apr. 3, 2006).

In opposition, Plaintiff distinguishes the cases cited above but does not cite any cases denying summary judgment on IBS-based ADA claims. Such cases do exist, and have denied summary judgment or otherwise found substantial impairment of a major life activity on the basis of bowel disorders. *See Joffer v. Premier Bankcard, Inc.*, 2008 WL 2371149, at *6-7 (D.S.D. June 6, 2008) (denying summary judgment and citing authorities). In *Joffer*, the plaintiff testified that she "had frequent bowel movements" and "that many times she could not hold the diarrhea and, as a result, would go to the bathroom in her pants." *Id.* at *7.

Defendant, citing *Branch*, *Atencio*, *Pedroza*, and *Hall*, argues that as a matter of law Plaintiff's IBS did not substantially limit any major life activity. It relies heavily on the deposition of Plaintiff's treating physician, Dr. Robert Be, who testified that he did not know of a medical reason why Plaintiff could not work an eight hour day if she had free access to a restroom. (Be Dep. at 9:17-24). In addition, Defendant cites the undisputed fact that at all relevant times Plaintiff maintained an additional part-time job at a department store working as many as twenty additional hours a week.

In opposition to summary judgment, Plaintiff argues that her IBS limited her in the major life activities of eating and walking. Eating and walking are major life activities for the purpose

9

of the ADA. *Waldrip v. Gen. Elec. Co.*, 325 F. 3d at 652. Plaintiff argues that eating food and taking her prescribed medication caused diarrhea which required her to have access to a bathroom, and that her symptoms impaired her ability to eat and walk. The record is devoid of meaningful evidence demonstrating a substantial and permanent limitation on Plaintiff's ability to walk; indeed, Plaintiff testified that she could "walk fast" to get to the ladies' room. (P's Dep., at 141:10-23). Thus, that major life activity was not substantially impaired by her IBS.

With respect to the major life activity of eating, Plaintiff argues in her opposition brief that "*any* meal triggers" her IBS symptoms. (P's Opp. at 1). But Plaintiff did not cite to specific record evidence corroborating that absolute relationship between eating a meal and having diarrhea. At her deposition, Plaintiff stated that the diarrhea was not always a consequence of eating:

> Q. During the time period that you were being supervised by Matt Konzem, can you tell me how frequently or how often you would have to leave your workstation to go to the bathroom for diarrhea?
> A. I can't – I don't believe I can give you a good answer, but that I can tell you without a doubt that, *after I eat food, like lunch, you know, after I would eat, sometimes I had to go to the restroom because of diarrhea*. And if we – you know, if we ever had anything in the morning, like sometimes there were things like – that the activities association would put on and they would have, like, a little breakfast, you know, at the office and just a treat, you know for everybody. And I can remember eating a chicken – a biscuit and chicken from Chick-fil-A that was just a treat that everyone had – you know, was given. So *once in a while in the morning*, you know. But mostly in the afternoon at work was, you know, the time when I would have diarrhea.

(P's Dep. 134:16-135:13, Rec. Doc. 30-2 at 35) (emphasis added). Plaintiff is in the best position to state the relationship between eating and her diarrhea, and she expressly stated she could not "give ... a good answer" to how often she had diarrhea at work. (*Id.*). In fact, she later characterized her IBS as constant but her diarrhea as "episodic":

> Q. And if we go down – let's see, looks like three lines, it says "May be episodic rather than a continuing period of incapacity." Do you see that.
> A. Yes, sir.
> Q. Does that apply to you?
> [Objection omitted]
> A. Absolutely. Absolutely episodic. The condition is constant, but that the – the symptom – for instance, having diarrhea, that is episodic, you know. And Dr. Be would probably say that there was a time when I was much healthier, even with the condition. There was a huge period where I was healthy, and then it changed.
> At least I can say my problem there, God willing, it will always change.

(P's Dep. at 311:10-312:8, Rec. Doc. 30-3 at 37).

Plaintiff's proffered evidence arguably supports an inference of more frequent diarrhea flare-ups than the plaintiff in *Branch*, *Atencio*, and other cases cited by Defendant. However, her evidence falls short of the evidence of severe impairment in *Joffer* and the cases cited therein. Ultimately, the summary judgment record, even read in Plaintiff's favor, establishes only that Plaintiff had episodic, intermittent diarrhea as a result of her IBS. This condition did not prevent Plaintiff from working an additional part-time job at a department store on top of her full-time employment with Defendant. While her IBS may have inconvenienced Plaintiff's ability to eat by sometimes causing subsequent diarrhea, Plaintiff has not presented summary judgment evidence that she had any substantial and permanent limitation of a major life activity, whichi s a requirement under the ADA. In the absence of a genuine fact issue as to that element, Plaintiff cannot establish her *prima facie* case that she was disabled within the meaning of the operative version of the ADA. Summary judgment is accordingly appropriate with respect to her failure-to-accommodate claim.

### 2) Failure to Grant a Reasonable Accommodation

Even if Plaintiff had raised a fact issue regarding disability, she would meet a formidable

hurdle in establishing a genuine fact issue that Defendant failed to grant her a reasonable accommodation. A defendant violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of" the defendant. 42 U.S.C. 12112(b)(5)(A) (2008). At the relevant time "reasonable accommodation" was defined as including:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (2008). Generally the disabled employee must inform the employer of the need for an accommodation. *See, e.g.*, *Cutrera*, 429 F.3d at 112. "Once such a request has been made, the appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." *Id.* (quotation omitted). "On the other hand, if the ***employee*** does not participate in the process in good faith, he is precluded from recovering from the employer." *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 266 (5th Cir. 1999) (emphasis in original). "An employer is not required to create 'light duty' jobs to accommodate." *Foreman v. Babcock & Wilcox & Co.*, 117 F.3d 800, 809 (5th Cir. 1997) (citing *Turco v. Hoechst Celanese Chem. Grp., Inc.*, 101 F.3d 1090, 1094 (5th Cir. 1996)); *accord Humbles v. Principi*, 141 F. App'x 709, 713 (10th Cir. 2005) ("An employer is not required to accommodate a disabled worker by

12

modifying or eliminating an essential function of a job ... [or] by reallocating work duties such that other employees are forced to work harder.").

Defendant argues that it granted Plaintiff the only accommodation for her IBS that she ever requested or that her doctor ever recommended: ready access to a bathroom. Dr. Be testified that the only accommodation Plaintiff needed was "access to a bathroom." (Be Dep., 17:24-18:23, Rec. Doc. 25-4 at 5). The record clearly establishes that Plaintiff's cubicle was located close to a bathroom which she could access. Thus, there is no genuine dispute that an accommodation in the form of access to a bathroom was granted.

In opposition, Plaintiff argues that she requested more than mere access to a bathroom and was denied that accommodation. She characterizes the issue as "whether State Farm afforded Christine Deeds adequate access to use the restroom *without repercussions*." (Rec. Doc. 30 at 9) (alterations omitted and emphasis added). But Plaintiff has not cited any record evidence that Defendant ever directly limited the number of trips she could take to or the amount of time that she could spend in the bathroom or kitchen.[6] Nor does the record reflect any instance in which Plaintiff needed to use the bathroom but was prevented or even discouraged from doing so. Accordingly, as best the Court can discern, the "repercussions" for using the bathroom are the workplace criticism for lack of productivity and eventual termination because

---

[6]For example:

Q. Did anyone at State Farm ever say to you or communicate to you that you should record any time that you spent away from your desk for medical reasons or medicinal reasons of increments more than 15 minutes?
A. No, sir, they didn't.

(P's Dep. at 144:6:-11, Rec. Doc. 30-2 at 37).

13

of lack of productivity. Essentially, Plaintiff claims that she requested and was denied use of the bathroom for unlimited periods of time without being subject to criticism for any impact it had on her work productivity.

This necessarily leads to two questions: whether there is a genuine factual dispute that Plaintiff actually requested the accommodation she now contends she was denied, and whether that requested accommodation was reasonable.

With respect to whether Plaintiff ever began the interactive process to request bathroom access "without repercussions," the record is muddled. On the one hand, when asked what Defendant could have done to "accommodate" her IBS, Plaintiff did not articulate anything relating to her condition or her bathroom use, but rather suggested transfer to a different manager:

> Q. Can you think of anything else that State Farm could have done to accommodate your medical condition?
> A. Aside from moving Matt or moving me and treating me the way other managers had treated their secretaries when they were feeling badly, right now, I don't have anymore words, but that I could probably think about it and answer more later.

(P's Dep., 227:12-20). On the other hand, Plaintiff also testified regarding the January 29, 2008 meeting with Konzem and Wooldridge in which something approaching an "accommodation" was discussed:

> Q. The same question about Tim Wooldridge. Did you ever make any specific suggestions to Tim Wooldridge about any kind of accommodation that State Farm could provide to you to help you do your job better?
> A. When we were in the meeting regarding the memorandum, that would mean Tim Wooldridge, Matt Konzem and myself, the point came up that – Tim said, "Well, Christine, why don't you take a 15-minute break, you know, take your medicine, take care of you and then, you know, take that break when you need to."
> And I said–I remember saying "I need more than 15 minutes." But I also

14

> look back, and I think I can't–my body can't work in a specific time
> period, such as like when I was a much younger woman working for
> Mervyn's, and the manager came around and said, "Okay, you take your
> break at 2, you take your break at 2:15, you at 3, Dan at 3:15. I couldn't
> possibly time when I had to go to the restroom. Certainly I–I want you to
> know that I recognize that Tim Wooldrige mentioned–you know, offered
> and said, "Take yourself a 15-minute break." But I think what he had in
> mind was more of a limited and healthier idea of what a healthy person
> can do, and I was in a horrible situation with my IBS. ***And when I said I
> need more than 15 minutes, I didn't get a response.***

(P's Dep., 151:6-24) (emphasis added).[7] But Wooldridge did not suggest a limit on the number of breaks Plaintiff could take. (*Id.* at 154:2-5). The Court will assume for the sake of argument that this raises a factual issue as to whether Plaintiff initiated an interactive process requesting more time to use the bathroom.

The next issue is whether the accommodation Plaintiff sought is reasonable. The record is devoid of any express limitations that Defendant imposed on Plaintiff's ability to use the restroom. Thus, the accommodation Plaintiff apparently pursued was the ability to use the bathroom at will, without being subject to comment or criticism for the effect that sustained time in the bathroom had on her workplace productivity. The Court doubts whether, as a matter of law, the ADA requires an employer to accommodate a disabled employee by refraining from requiring the employee to comply with basic productivity requirements applicable to all employees. Although the facial unreasonableness of that requested accommodation is probably also sufficient to defeat Plaintiff's claim for a failure to accommodate, the Court need not resolve

---

[7]There is also evidence in the record that Plaintiff may not have been entirely forthcoming and cooperative with Konzem in working with Defendant to reach a reasonable accommodation for time to use the bathroom. (*See* P's Dep. at 146:16-150:16, 208:8-9). Thus, Plaintiff may have substantial problems at trial convincing the trier of fact that she actually requested a reasonable accommodation that was not provided.

that question. As noted above, Plaintiff has not carried her burden to show that she was disabled under the ADA.

### C. ADA Retaliation Claim

Finally, Defendant also moves for summary judgment on Plaintiff's ADA retaliation claim. To show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). To pursue a retaliation claim, Plaintiff need not actually be disabled or a member of a protected class, but rather must have a good faith belief that the ADA has been violated. *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). If Plaintiff establishes the prima facie case, Defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If that reason is provided, Plaintiff then must produce evidence that the proffered reason is a pretext and that but for her protected activity, the adverse employment action would not have occurred. *Id.* "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Seaman*, 179 F.3d at 301; *accord Tabatchnik*, 262 F. App'x at 676.

To establish "but-for" causation and defeat summary judgment, Plaintiff "must demonstrate a conflict in substantial evidence on the ultimate issue of 'but for' causation." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012) (quotation and some alterations omitted). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quotation omitted). "[T]o be persuasive evidence, temporal proximity must be very close,

16

and importantly ... temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (emphasis in original).[8]  But the Fifth Circuit "affirmatively reject[s] the notion that temporal proximity standing alone can be sufficient proof of but for causation." *See id.*  Thus, while "very close" temporal proximity may be enough to establish the *prima facie* case, if the defendant articulates a legitimate, non-discriminatory reason for termination, that close proximity alone will not suffice to show a genuine dispute of material fact.  *See Hernandez*, 670 F. 3d at 658 ("Temporal proximity, standing alone, is not enough.").

Defendant concedes for the sake of argument that Plaintiff has sufficient summary judgment evidence on the protected activity and adverse employment action elements of her *prima facie* case, but disputes whether Plaintiff can show a but for causal connection between the two.  Defendant also articulates Plaintiff's documented unsatisfactory work history, low productivity, and difficulties interacting with co-workers as a legitimate, non-discriminatory reason for terminating her employment.

In opposition, Plaintiff argues that the requisite causal link can be inferred from temporal proximity between her termination and her request for an accommodation, and from the alleged lack of foundation for criticism of her work productivity.  Neither argument is adequately supported by facts or precludes summary judgment.

With respect to temporal proximity, Plaintiff argues that she requested an accommodation in January 2008 and was fired in March 2008, and therefore the Court can infer

---

[8]*Strong* analyzed a Title VII retaliation claim, but the elements of a Title VII and ADA retaliation claim are identical.  *See Grubic v. City of Waco*, 262 F. App'x 665, 667 n.6 (5th Cir. 2008).

retaliation from the timeline. This is insufficient. Even if that two-month gap was sufficient to state her *prima facie* case, it is Plaintiff's ultimate burden to show a genuine conflict in substantial evidence on the causation issue, from which reasonable and fair-minded individuals could differ as to whether Defendant's basis for dismissal was pretextual. *E.g.*, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d at 658. With respect to that burden, "[t]emporal proximity, standing alone, is not enough." *Id.* Moreover, the undisputed record reflects that Defendant noted Plaintiff's low productivity in an end-of-cycle job review in December, 2007, *before* Plaintiff claims she requested the accommodation. (Rec. Docs. 25-7 at 3, 30-1 at 2). Thus, the legitimate, non-discriminatory basis for terminating her predates her allegedly protected action, thus negating any inference that might permissibly be drawn from temporal proximity. The timeline simply does not warrant any inference of pretext or retaliatory motive.

Plaintiff also disputes Defendant's conclusion that she was an unproductive worker and argues that termination on that basis must have been pretextual. However, Plaintiff presents no affirmative evidence of her productivity to support that contention. Instead of evidence, Plaintiff presents bombast; she cites long swathes of deposition testimony by her supervisor, points to purported inconsistencies, and rhetorically asks "whether anyone on Planet Earth, much less a reasonable juror, would accept" Defendant's sworn statement at face value. (*E.g.*, Rec. Doc. 30 at 20). But she offers no concrete evidence regarding specific work she did that Defendant did not credit, and certainly not enough evidence to generate a factual dispute that Defendant's reason was mere pretext.

In short, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, namely, lack of productivity. The record is undisputed that Defendant

18

articulated this reason to Plaintiff *before* she requested the accommodation she claims she was denied, and consistently reiterated the reason to her in the months preceding her termination on that basis. In response, Plaintiff has not presented substantial evidence that Defendant's reason was pretext for firing her because she requested an accommodation. Accordingly, Defendant's summary judgment motion is granted with respect to the ADA retaliation claim as well.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment (Rec. Doc. 25) is GRANTED. All of Plaintiff's claims are dismissed WITH PREJUDICE.

New Orleans, Louisiana, this 5th day of April, 2012.

_____
UNITED STATES DISTRICT JUDGE